### DEMURRAGE ON CARS " BUNCHED " DURING A FLOOD.

Court of Appeals for Hamilton County.

THE JOSLIN-SCHMIDT COMPANY v. THE BALTIMORE & OHIO SOUTHWESTERN RAILROAD COMPANY.*

Decided, February 28, 1916.

*Railways—Demurrage Not Recoverable—Where Cars, Constructively Delivered, Were Not in Fact Placed—Owing to the Delay and Confusion Caused by a Great Flood.*

Consignees who are bound under the "average agreement" rule for demurrage charges on cars constructively delivered, notwithstanding the "bunching" of such cars, are relieved therefrom where the bunching was not due to the act or neglect of some railroad company, but was wholly due to conditions prevailing during a great flood.

*David S. Oliver,* for plaintiff in error.
*Harmon, Colston, Goldsmith & Hoadly,* contra.

JONES (E. H.), P. J.

In this action a petition in error is filed to reverse a judgment of the Superior Court of Cincinnati, in which court the case was submitted, without pleadings or process, on an agreed statement of facts in accordance with the provisions of Section 11472 of the General Code of Ohio. Upon the agreed statement of facts the superior court being of the opinion that plaintiff below, the Baltimore & Ohio Southwestern Railroad Company, was entitled to recover, rendered judgment for plaintiff. The question presented to us, therefore, is purely one of law.

---

*Motion to require the Court of Appeals to certify its record overruled May 29, 1916.

The railroad company by the proceeding below recovered a judgment against the Joslin-Schmidt Company for $364, with interest, such sum having been found by the court upon the agreed statement of facts to be due the railroad company for demurrage charges which were made by the railroad company against the consignee for failure to unload its cars within the prescribed time.

It appears that the railroad company had published in accordance with law a set of "Car Demurrage Rules," a copy of which appears as "Exhibit A" attached to the agreed statement of facts. From these rules it appears that the railroad company in order to encourage the speedy unloading of cars offered to enter into an agreement with consignees by which they should receive credit for cars unloaded within twenty-four hours instead of using the forty-eight hours free time allowed under demurrage rules. Such an agreement had been entered into between the parties to this action, and a copy of same is attached to the agreed statement of facts as "Exhibit B."

We now quote the following from the agreed statement of facts:

"Thereafter, during the months of April, May and June, 1913, there were shipped to the defendant, over the lines of the Chesapeake & Ohio Railroad Company, the Louisville & Nashville Railroad Company, and other railroad companies, various shipments of coal and other commodities; the dates of the shipment of the same, the dates of the arrival of the same at Cincinnati, the dates when the same were constructively placed in accordance with the terms of said tariff, the dates when the same were actually placed, and the dates when the same were released, will all appear by the tabular statement which is hereto attached, marked 'Exhibit C,' and made part hereof with the same force and effect as if the same were herein set out at length.

"The said cars were bunched in transit or at destination, and were delivered by plaintiff in accumulated numbers in excess of daily shipments, but the said bunching did not occur through any fault of any railroad, the same having been caused wholly by the conditions created by the flood of March, 1913, and the confusion and delay of traffic incident thereto and to the results thereof."

By paragraph 2 of section (b) of Rule 8 of said "Car Demurrage Rules" it is provided:

"2. *Cars for unloading or reconsigning.* When as the result of the act or neglect of any railroad, cars destined for one consignee, at one point, are bunched at originating point, in transit, or at destination, and delivered by this railroad in accumulated numbers in excess of daily shipments, the consignee shall be allowed such free time as he would have been entitled to had the cars been delivered in accordance with the daily rate of shipment. Claim to be presented to railroad company's agent within 15 days."

By virtue of this provision in the Car Demurrage Rules there would have been no liability for demurrage charges in this case, but by the provisions of the so-called "average agreement" entered into by these parties this exemption from demurrage was waived on the part of the Joslin-Schmidt Company by the following language:

"(c) A shipper or receiver who elects to take advantage of this average agreement shall not be entitled to cancellation or refund of demurrage charges under Section A, paragraphs 1 and 3, or Section b of Rule 8."

So it will be seen that if the "bunching of cars" in the yards at Ivorydale had been admittedly due to any act or neglect of any railroad company the Joslin-Schmidt Company would be bound by the paragraph above quoted from the "average agreement" by which it waived any exemption from the provisions of the car demurrage rules. But the cars for which demurrage is here claimed arrived in bunches at the rate sometimes of six or seven a day, and in many instances over a month after they were billed or shipped. They came in without any reference to the order in which they were shipped, without any rule or regularity, and in numbers far in excess of the capacity of the private track used by the Joslin-Schmidt Company for unloading.

This claim for demurrage, it might be added, is largely based upon the constructive placement rule, which will be found designated as "Rule 5" in the "Car Demurrage Rules," and reads as follows:

"RULE 5.

"Placing Cars for Unloading.

"(a)    When delivery of cars consigned or ordered to any other than public-delivery tracks or to industrial interchange tracks can not be made on account of the act or neglect of the consignee, or the inability of the consignee to receive, delivery will be considered to have been made when the cars were tendered.    The railroad company's agent must give the consignee written notice of all cars he has been unable to deliver because of the condition of the private or interchange tracks, or because of other conditions attributable to consignee.    This will be considered constructive placement."

After careful examination of the rules and agreements binding these parties, which are above briefly referred to, we are of the opinion that there is an absence of any obligation express or implied upon the Joslin-Schmidt Company to pay these demurrage charges.    Paragraph 2 of Section (b) taken from Rule 8 of the Car Demurrage Rules, *supra*, is limited in its effect to bunching occasioned by the act or neglect of some railroad company; therefore it is only a situation thus created that can be affected by the express waiver contained in the "average agreement."    The agreed statement of facts herein expressly removes this case from the control of said provisions.    The parties have stipulated, as shown above, that these cars were delivered "in accumulated numbers in excess of daily shipments, but the said bunching did not occur through any fault of any railroad, the same having been caused wholly by the conditions created by the flood of March, 1913, and the confusion and delay of traffic incident thereto and to the results thereof."    This is the only reference in the agreed statement of facts to the flood of 1913, and it is not expressly stated here that said flood was an "act of God"; but the stipulation that the delay and confusion and the bunching was caused wholly by the flood is equivalent to saying that it was caused by an agency over which the parties, nor any earthly power, had any control.

We think, therefore, that we are justified in holding upon the agreed statement of facts that the delays in shipment and the so-called bunching of the cars was an "act of God."    The flood of

March, 1913, has been many times held to have been an "act of God," and in the absence of any stipulation that it was, we are inclined to think that courts in the Ohio and Miami valleys might take judicial notice to that effect. The delays through "act or neglect of any railroad" referred to in the Car Demurrage Rules are manifestly such delays for which a derelict company might be made to respond in damages. The delays which we are called upon to consider in this case are not such as they. Such delays as occurred from this flood are nowhere mentioned in the rules or in the accompanying agreement, and there is nothing to show that delays occasioned by an "act of God" were in contemplation of the parties. It would be a harsh rule which would relieve one party on account of "an act of God" and at the same time permit it to penalize the other on account of delay and damage resulting from the same cause.

For the reasons thus briefly stated the judgment will be reversed, and judgment entered here for plaintiff in error.

JONES (Oliver B.), J., and GORMAN, J., concur.